1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

|  |  |
|---|---|
| WILLIAM T.W., JR.,<br><br>                         Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                 Defendant. | CASE NO. 3:22-cv-05275-LK<br><br>ORDER AFFIRMING DECISION<br>AND DISMISSING CASE |

Plaintiff William Thomas Windham, Jr. seeks review of the denial of his applications for Supplemental Security Income. He advances four arguments on appeal: (1) the Administrative Law Judge ("ALJ") erred by rejecting his symptom testimony; (2) the ALJ erred by rejecting the medical opinion of Astrid Aguilera, PA-C, (3) the ALJ erred by determining that he could perform jobs inconsistent with his residual functional capacity, and (4) the Appeals Council ignored new evidence. *See* Dkt. No. 10 at 1. As discussed below, the Court affirms the Commissioner's final decision and dismisses this case with prejudice.

1

## I.    BACKGROUND

2       Mr. Windham is 62 years old, has a limited education, and has worked as a delivery driver

3    and automobile parts clerk. Dkt. No. 8 at 117. On May 30, 2017, he applied for benefits, alleging

4    disability as of July 1, 2012. *Id.* at 201–202. His applications were denied initially and on

5    reconsideration. *Id.* at 210, 212–22. After a hearing on October 30, 2018, during which Mr.

6    Windham amended his alleged onset date to May 30, 2017, the ALJ issued a decision finding that

7    he is not disabled. *See id.* at 166–99, 223–42. On March 16, 2020, the Appeals Council remanded

8    the case for a new hearing because, among other defects, the ALJ concluded that Mr. Windham

9    had the residual functional capacity to perform medium work without making a severe physical

10   impairment finding. *Id.* at 243–46. The Appeals Council instructed the ALJ to "[g]ive further

11   consideration to [Mr. Windham's] maximum residual functional capacity and provide appropriate

12   rationale with specific references to evidence of record in support of the assessed limitations[.]"

13   *Id.* at 245. It further directed the ALJ to "obtain supplemental evidence from a vocational expert

14   to clarify the effect of the assessed limitations on [Mr. Windham's] occupational base[.]" *Id.* The

15   Appeals Council specifically stated that, to accomplish this task, the ALJ must "ask the vocational

16   expert to identify examples of appropriate jobs and to state the incidence of such jobs in the

17   national economy." *Id.* at 246. Following a second hearing on December 2, 2020, the ALJ again

18   found Mr. Windham not disabled. *See id.* at 97–125.

19

## II.    THE ALJ'S DECISION

20      Utilizing the five-step disability evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920,

21   the ALJ found the following:

22   **Step one:**  Mr. Windham has not engaged in substantial gainful activity since May
     30, 2017.

23

24   **Step two:** Mr. Windham's severe impairments include pulmonary emphysema and
     nodules with heavy tobacco use, borderline intellectual functioning, and

depression.

**Step three:**   These impairments do not meet or equal the requirements of an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity:**   Mr. Windham can perform medium work.

**Step four:**   Mr. Windham cannot perform past relevant work.

**Step five:**   As there are jobs that exist in significant numbers in the national economy that Mr. Windham can perform, he is not disabled.

Dkt. No. 8 at 103–118. The Appeals Council denied Mr. Windham's request for review, which rendered the ALJ's decision the Commissioner's final decision. *Id.* at 6–10.[1]

## III.   DISCUSSION

The Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (cleaned up). Thus, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (cleaned up). The ALJ is nonetheless responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). This means that the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987). When the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation must

---

[1] The remainder of the procedural history is not relevant to the outcome of the case and is thus omitted.

be upheld. *Ford*, 950 F.3d at 1154. And last, the Court will not reverse an ALJ's decision on account of harmless error, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (cleaned up).

**A.      The ALJ Did Not Err in Evaluating Mr. Windham's Symptom Testimony**

Mr. Windham first argues that the ALJ failed to provide "specific, clear and convincing reasons for rejecting [his] subjective statements." Dkt. No. 10 at 2. The thrust of Mr. Windham's argument is that the ALJ cherry-picked portions of the medical record to support his conclusions without due regard for the entirety of that record. *Id.* at 4–5. According to Mr. Windham, the ALJ erred by relying on only the "normal" mental health examinations because his symptoms "wax and wane," and a claimant need not demonstrate that he is bedridden to be entitled to benefits. *Id.* at 5.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (cleaned up). If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("If the ALJ finds that the claimant's testimony as to the severity of h[is] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). When evaluating a claimant's credibility, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either

in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found that Mr. Windham met the first step of the test; that is, he presented objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See, e.g.*, Dkt. No. 8 at 151–52 (Mr. Windham claimed that he "can't seem to do things" because his depression "just kind of gets to [him]"—some times worse than others). But the ALJ rejected the severity of Mr. Windham's symptoms by citing various medical records undermining his testimony. *See* Dkt. No. 8 at 107–117. Although Mr. Windham had an exacerbation in symptoms of depression following his wife's passing in March 2017, clinical notes reflected that his symptoms significantly improved thereafter. Dkt. No. 8 at 114; *see also id.* at 180 ("I had harder depression back when I -- the -- right around the time I had lost her it was worse[.]"); *id.* at 188 (noting that the "harder" depression lasted about a year and a half, but "I did fairly well dealing with it myself"). For example, by August 2017, he reported that he had resumed paying his own bills and no longer needed prompting from his sister. *Id.* at 114; *see also id.* at 423, 506. Mr. Windham declined psychiatric medication intervention and counseling, denied any symptoms of mood or thought disorder, and stated that he experiences only periodic grief and sadness. *Id.* at 606, 630, 664, 782; *see also id.* at 181 ("I've been depressed a lot, you know, but not a high point of depression. Just enough that -- you know, irritating, I guess you'd say."). Mr. Windham continuously presented with a normal mood during his counseling appointments and reported either that his depression was maintained at a "normal level" or that he was not experiencing depression at all. *Id.* at 614, 617, 715, 720–21, 726, 732, 738–42, 787. During a June 2018 visit with a therapist, Mr. Windham stated that he was "not feeling depression" but had dealt with it in the past. *Id.* at 109, 617. He also testified in October 2018 that "the mental health place

that [he] go[es] to, Comprehensive, gave [him] some depression pills," instructing him "to only take them if [he] felt [he] needed to take them, and [he] never got to the point where [he] felt [he] needed it, so [he] didn't take them." *Id.* at 181–82. On May 15, 2019, after Mr. Windham missed multiple counseling sessions, his counselor at Comprehensive Life Resources discharged him from the clinic. *Id.* at 111, 766–67, 816. And in June 2020, Mr. Windham reported that he did not need counseling and participated in it only "to get on that disability." *Id.* at 809.

This is not a case in which the ALJ "singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit" Mr. Windham's testimony. *Garrison*, 759 F.3d at 1018. Although the Court—like the ALJ before it—has little doubt that Mr. Windham experienced, and continues to experience, bouts of depression to various degrees, the record supports the ALJ's determination that Mr. Windham's symptoms are not sufficiently severe or sustained to qualify for disability benefits. And the ALJ supported this conclusion with clear and convincing evidence. *See* Dkt. No. 8 at 108–17 (discussing the conclusions of several psychiatric and psychological evaluations, as well as at least 15 counseling notes from three-year period).

Mr. Windham also appears to suggest in passing that substantial evidence does not support the ALJ's finding with respect to his physical limitations. *See* Dkt. No. 10 at 6. During the 2018 hearing, Mr. Windham testified that he uses a cane to walk because his left leg "feels broken." *Id.* at 179. During the 2020 hearing, Mr. Windham testified that, since the previous hearing, his physical impairments had worsened. *See id.* at 132–33. He had shortness of breath, could not stand or walk longer than three minutes, and could not run at all. *Id.* at 137. Mr. Windham further testified that he had left knee pain and could barely walk due to pain on the bottom of his right foot. *Id.* at 135. Additionally, he had "terribly bad" back pain for "quite a while," along with severe right-hand pain that traveled up his arm to the elbow. *See id.* at 141–43.

The ALJ rejected Mr. Windham's testimony, again finding his alleged degree of limitation "not fully consistent" with the medical evidence or his reported activities. *See id.* at 108, 117. And here again, the ALJ supplied clear and convincing evidence to support his conclusion by identifying medical records demonstrating that Mr. Windham has "clear lungs" and "normal respiratory effort"; indeed, as of the most recent hearing, he continued to ride his bike and "smoke up to three packs of cigarettes daily." *Id.* at 114; *see also id.* at 137, 686, 722–23, 795. Mr. Windham also had a "normal" heart rate and rhythm without chest pain, claudication, edema, or palpitations. *Id.* at 634, 639, 649, 679, 683, 850-51, 896. Although he reported "sharp pains" under his left breast after running, there was no "radiation of symptoms," "associated symptoms," or "tenderness," and the pain subsided "after 1-2 minutes." *Id.* at 677. Mr. Windham regularly reported "no symptoms of palpitations, tachycardia, shortness of breath . . . or exertional chest pains." *Id.* at 684. The ALJ also reasonably rejected Mr. Windham's testimony based on his daily activities. Mr. Windham alleged that his physical impairments and depression hindered his ability to function. Yet he routinely ran, took his dog for a walk (sometimes four to five times daily), rode his bicycle, cleaned his house, and performed other household chores. *Id.* at 423, 661, 708, 718. The Court finds no error.

**B.     The ALJ Did Not Err in Evaluating Aguilera's Medical Opinion**

The ALJ rejected Aguilera's medical opinion as "unpersuasive" because "[t]he record contains no objective evidence of bilateral hand osteoarthritis." *Id.* at 116. Mr. Windham argues that this was error because "the record does contain statements of bilateral hand pain which are inconsistent with the ALJ's finding that [he] can frequently finger and handle." Dkt. No. 10 at 6. And with respect to Mr. Windham's knee and lower back pain, he contends that the record "clearly indicates" he cannot "sustain and persist at a medium work intensity[.]" *Id.* at 6–7.

1    Because Mr. Windham filed his application for benefits after March 27, 2017, the ALJ was

2    required to consider the persuasiveness of Aguilera's medical opinion using five factors:

3    supportability, consistency, relationship with claimant, specialization, and "other factors." *See* 20

4    C.F.R. § 416.920c(c); *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022).[2] The most

5    important of these factors are supportability and consistency, and the ALJ is required to explain

6    his application of those two; he "may, but [is] not required to," explain his consideration of the

7    remaining three (relationship with claimant, specialization, and other). 20 C.F.R.

8    § 416.920c(b)(2). Supportability measures the persuasiveness of the medical opinion based on

9    how "relevant the objective medical evidence and supporting explanations presented by a medical

10   source are to support his or her medical opinion[.]" *Id.* § 416.920c(c)(1). Consistency measures

11   the persuasiveness of the medical opinion based on how "consistent [the] medical opinion[] . . . is

12   with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.*

13   § 416.920c(c)(2). An ALJ cannot reject a doctor's opinion as unsupported or inconsistent "without

14   providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

15        Aguilera's opinion came in the form of a questionnaire that Mr. Windham's counsel

16   submitted to her. This questionnaire lists a series of brief statements about Mr. Windham's

17   impairments and ability to perform work during an average eight-hour day. *See* Dkt. No. 8 at 702–

18   04. For example, Aguilera indicated that Mr. Windham's left knee pain, low back pain, and

19   bilateral hand osteoarthritis would interfere with "prolonged standing, walking or sitting upright,

20   use of either upper extremity for reaching, holding, handling or fingering, and/or would require

21   [him to] lay down at times during the day[.]" *Id.* at 702. She also indicated that Mr. Windham's

22

23   ───────────────
     [2] "Other factors" refers to anything that "tend[s] to support or contradict a medical opinion," and includes, but is not

24   limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding
     of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(5).

pain could "interfere with attention, concentration and persisting at tasks" for "[a]bout 20 minutes" each hour of the workday. *Id.* at 702–03. Aguilera further opined that, during an eight-hour workday, Mr. Windham could stand and walk for only one to two hours due to his "[e]mphysema and left knee pain"; sit upright for about two hours due to his "low back pain"; and would need to recline for one to two hours due to his "[e]mphysema and low back pain[.]" *Id.* at 703. According to the questionnaire, Mr. Windham is able to use his hands and arms "less than 1/3 of an 8 hour workday" for "reaching, holding, handling and manipulating objects" due to "[b]ilateral hand osteoarthritis." *Id.* at 703–04. And last, Aguilera indicated that Mr. Windham would need to take one or more "unscheduled" breaks "of 15 minutes or more" during a typical eight-hour workday. *Id.* at 704.

The ALJ's decision recites Aguilera's opinion in detail. *Id.* at 116–17. And he considered it "in accordance with the requirements of 20 CFR 416.920c." *Id.* at 107. Again, though, he ultimately rejected that opinion as "unpersuasive" because "[t]he record contains no objective evidence of bilateral hand osteoarthritis" and "the objective medical evidence does not corroborate knee pain and low back impairment to the degree described[.]" *Id.* at 116–17. Nowhere in the questionnaire does Aguilera offer a "supporting explanation" for her otherwise conclusory findings as to Mr. Windham's limitations; indeed, the questionnaire calls for one-line answers and repeatedly asks the evaluating medical professional to merely list the medical condition or conditions responsible for the indicated limitations. *See id.* at 702–04; 20 C.F.R. § 416.920c(c)(1) (supportability assesses the relevance of the objective medical evidence and "supporting explanations" presented by the medical professional). Put differently, Aguilera does not explain how or why the identified medical conditions limit Mr. Windham's physical movement or abilities. Nor does she explain how the prescribed limitations account for the identified medical conditions. To be sure, some of the prescribed limitations are self-explanatory (*e.g.*, two-hour limit on sitting

upright due to lower back pain). Others, however, are less intuitive (*e.g.*, emphysema is apparently partially responsible for Mr. Windham's need to recline for one to two hours per day). *See Ford*, 950 F.3d at 1155 ("While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." (cleaned up)).

And as the ALJ observed, the objective medical evidence does not corroborate the alleged limitations—at least not to the degree Aguilera suggests in the questionnaire. Mr. Windham points to treatment records about his bilateral hand and low back pain. *See* Dkt. No. 10 at 6. But beyond generally proving that Mr. Windham was experiencing hand and back pain, the records again say nothing about bilateral hand *osteoarthritis*, pain intensity, or how the pain might affect Mr. Windham's ability to perform certain job functions. *See* Dkt. No. 8 at 116–17, 828–29, 831; *see also id.* at 142–43 (noting that finger and hand pain is on the right hand ("not so much on the left hand"), lasts "three to four days," then "kind of tapers off real slow," then "virtually just kind of goes away, . . . but then less than a month or so it comes back again.").[3] The Court thus cannot say that the ALJ erred in finding Aguilera's opinion "unpersuasive." *Id.* at 116.

## C.   The ALJ's Step-Five Finding is Consistent with Mr. Windham's Residual Functional Capacity

As relevant here, the ALJ found that Mr. Windham has the residual functional capacity to "tolerate occasional exposure to fumes, odors, dusts, gasses, and poor ventilation." *Id.* at 107. And at step five of the sequential evaluation process, the ALJ further determined—based on Mr. Windham's residual functional capacity and the testimony of the vocational expert—that he has the ability to perform the following jobs: Automobile Detailer, Janitor, and Laundry Worker II. *Id.*

---

[3] Despite the lack of supporting objective medical evidence in the record, the ALJ still considered Mr. Windham's "subjective complaints of bilateral hand pain . . . as a non-severe impairment" that limited him to frequent handling and fingering, and likewise "considered [his] subjective knee and low back pain symptoms by limiting him to a range of medium level of work." Dkt. No. 8 at 107, 116–17.

at 118. Mr. Windham now contends that these jobs involve "near constant exposure" to pulmonary irritants and, contrary to the ALJ's finding, he cannot do them. Dkt. 10 at 7. At the 2020 hearing, however, the vocational expert testified that an individual with the same residual functional capacity as Mr. Windham—including the same ability to tolerate "occasional exposure to fumes, odors, dusts, gases and poor ventilation"—could be an Automobile Detailer, Janitor, or Laundry Worker II. Dkt. No. 8 at 159–60. Such testimony is sufficient to support the ALJ's step-five finding. *See Ford*, 950 F.3d at 1160 ("Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding."). The Court finds no error.

**D.    The Appeals Council Did Not Fail to Consider New Evidence**

Following the 2020 hearing, Mr. Windham submitted new medical records along with his opening brief. *See* Dkt. No. 11. He argues that the Appeals Council "ignored" this evidence because it is not included in the administrative record. Dkt. No. 10 at 8. Contrary to Mr. Windham's assertion, though, the Appeals Council did consider this new evidence and found that it "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." Dkt. No. 8 at 7. And the Appeals Council included the new evidence in the administrative record. *Compare id.* at 21–96 *with* Dkt. No. 11 at 7–34.

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The Court must therefore consider whether, in light of the new medical records submitted by Mr. Windham, the ALJ's nondisability determination is supported by substantial evidence. The evidence in question shows that Mr. Windham was diagnosed with "[l]eft upper lobe lung adenocarcinoma" and

1    underwent a lobectomy in February 2021. Dkt. No. 8 at 18–19. Yet it also shows that Mr.

2    Windham's lungs are "clear" with "good air movement throughout," and that he has no "joint

3    swelling or tenderness." *Id.* at 33; *see also id.* at 19 ("He denies chest pain, shortness of breath,

4    syncope, presyncope, paroxysmal nocturnal dyspnea, orthopnea, or constitutional symptoms.").

5    The post-surgical treatment notes likewise indicate that Mr. Windham's pain "is well managed,"

6    he "is overall making progress," and he continues to smoke. *Id.* at 57, 89. This evidence also

7    includes a health questionnaire in which Mr. Windham marked "no" to "past [or] present health

8    issues" of depression/anxiety, chest pain, shortness of breath, and joint pain or arthritis. *Id.* at 50,

9    84. The new medical records do not undermine the ALJ's nondisability determination, which

10   remains supported by substantial evidence. The Court affirms that determination.

## IV.   CONCLUSION

12       For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case

13   is DISMISSED with prejudice.

15       Dated this 5th day of March, 2024.

Lauren King
United States District Judge